Good morning and I'm Judge Bennett and along with my colleagues Judge Van Dyke and Judge Holly Thomas, welcome to the Ninth Circuit. We have two cases today on the oral argument calendar but we have a number of cases that we have previously submitted without argument. Hall v. City of Portland is submitted. Merrill v. Lane is submitted. We're going to take our two argument cases in the order in which they appear on the calendar and the first one is Fli-Lo Falcon v. AMZN and whenever you are ready, counsel. May it please the Court, my name is Andrew McNeila and I represent the District Court aired in concluding that the DSP agreement was not exempt under Section 1 of the FAA. A proper discussion of the District Court's analytical errors, however, first requires a discussion of four key factual points. First, it is undisputed that under the DSP 2.0 program, AMZN recruited only individuals. Pre-existing businesses or even groups of individuals were not allowed to apply. AMZN then required the Second, all the DSP's personnel, which means the DSP's owners as well as the drivers, performed qualifying transportation work. This means that if AMZN had simply contracted directly with any of those individuals, the FAA exception would apply. But they didn't. No, they didn't. Correct. But the point of that is that it expresses how this is ultimately a fight about form over substance, right? Well, I mean, you can call it a fight over form over substance. You can also call it a dispute over what Section 1 of the FAA means. And that your disagreement is really with the Congress and not AMZN. That's correct, but our disagreement is not with Congress, just to be clear, because the plain words of the statute, the statutory text as well as the Supreme Court's guidance looking at that text, makes clear that the exception does apply to business entities so long as the contract at issue creates an independent contractor relationship and calls for the performance of work by persons falling within one of the three exempt categories. Well, it says contracts of employment of seamen, railroad employees or any other class of workers. So contracts of employment of seamen, of railroad employees or any other class of workers. I mean, that's what we are looking at the meaning of, right? That's correct, and I'll walk through each step of the statutory text to explain or to show hopefully why business entities are captured by the exception. So first, let's start with what contract of employment means. In new prime, the Supreme Court said that that term should be construed broadly. Can include independent contractors. That's correct. It just doesn't encompass the standard typical employment relationships, but captures any or agreements that require independent contractors to perform work. Now this is exactly what the DSP agreement does. It expressly creates an independent contractor relationship. It says so in paragraph 10 or section 10 of the agreement. It says you are an independent contractor of Amazon, one. Two, it calls for the performance of qualifying transportation and delivery services. That's in the introduction paragraph to the agreement. It says we want delivery services and transportation services. And third, it states that the work is to be performed by the DSP and the DSP's workers, and we know that because the agreement incorporates by reference the program policies, and the program policies are entirely about how the drivers are and the owners are to carry out the services for which they're being hired. Right. And you guys, your company or companies could have contracts with those workers too, right? Amazon actually required them to have contracts of employment with them. And that's, I'll circle back to that. But what I mean, if you have contracts of employment with them, you couldn't mandate under the FAA arbitration. We so under the contract, we could try to mandate arbitration, but they would be exempt from arbitration. Right. So, so it clearly would apply to your contracts with the people who are workers engaged in foreign or interstate commerce, but Amazon has no direct contractual relationship with those individuals. Well, I don't believe it's, well, I don't believe it's accurate to say no direct relationship. No direct contractual relationship. You would agree with me that your employees couldn't sue Amazon for breach of contract. Amazon's, the employees themselves and not directly contract with Amazon. That's correct. But I want to be clear though, to that point, Amazon does not treat the contracting party, the DSP entity and its owners as separate and distinct. As we point out in our brief in two other cases, Amazon has argued that the arbitration clause applies with equal force to the individual owner of the DSP, even though they're not signatories, right? Amazon. And again, to be clear. I may make that argument, but that's not before us today, right? Well, it's before the court today insofar as it shows that Amazon doesn't actually view the DSPs and the individuals as negative. I mean, the fact, the fact is before us the dispute isn't. Well, those disputes aren't. Right. But the point that Amazon takes the position in other cases that there really is no functional difference between the DSP owners and the DSP workers, I mean, and the DSP entity and says you have to go to arbitration, even though you're asserting claims in your individual capacity. Those would happen in those two other cases. Amazon said, no, you know, these, as I understand it, these DSPs have employees of their own. It's not just the owners necessarily of the DSPs, at least in some instances. Right. The DSPs have, let's just say, the owners of the DSP, but say 10, 10 employees. It, you know, I'm just making that number up. But those 10 employees that are not owners, as Amazon said that they if they were to bring some lawsuit against Amazon, I don't know what the theory would be because they don't have a contract with Amazon. But as Amazon said that they've agreed to arbitrate the people that are one degree removed. Does that make sense? Sure. So there's been extensive letters back and forth. Amazon has never argued that the individual workers, any of them, would not be exempt. Right. So, so, so if Amazon is a point that we say not exempt, you're saying they've never argued that they would not have to arbitrate. Let me, let me clarify. So in terms of whether or not those persons qualify as transportation workers and Amazon could force them to arbitrate under the FAA or whether they would be exempt, Amazon has never claimed, has never argued in this case that those individuals couldn't take advantage of the Section 1 exemption from the FAA had there been a direct contractual relationship. Right, right, but Amazon doesn't have a, but Amazon would have a problem if it tried to arbitrate with them in any event because it doesn't have a contract with them to, to, to putting that aside, you know, if they came in and let's say they tried to sue for a tort, right, they got injured on the job. So for some reason, Amazon's boxes are too heavy. So they got hurt or something. So they're suing Amazon, not just their employer. What would, Amazon isn't saying that they could somehow force them to arbitrate that against, maybe the claim would fail for other reasons, but. Yeah, I'm not aware of that case arising. Only the only instances where we have this sort of duality is where Amazon is trying to get the DSP owner to force them into arbitration as well, even though they were asserting individual claims, whether or not Amazon could raise, I don't know what argument, what arguments they could raise in defense to the hypothetical your honor poses. But I did want to get back to, to, I don't know, I don't want to cut off your question, but that's it. I just, it just seems to me that that, that seems to indicate that like, that, that this is not just a complete workaround. I think you earlier said this is a workaround or this is not a workaround because it's not like Amazon's trying to make it so that, so that the basic employees have to, have to arbitrate. Yeah, all they're doing is they're saying that a company has to arbitrate. And I think your response is, yeah, but, but the company is owned by people that in some instances also drive. No, Amazon is trying to make the employees arbitrate. If that wasn't clear, the program policies, and again, this shows why this whole idea that these are independent business entities is a sham. But you just said, you know, you said it is trying to make the employees arbitrate. No, what I'm going to tell you what the policies are. So the Amazon requires the DSPs to not hire independent contractors. It requires, tells them you have to classify your guys as employees and make them sign agreements to, to arbitrate and, and class action waivers. So Amazon is setting the terms of employment with respect to these employees, including the requirement that setting forth their, their employment relationship with the DSPs. So Amazon would claim, I'm sure as a third party beneficiary of the contract between the DSPs and their employees, that they would have to bring any claims in arbitration. Otherwise, why would Amazon force them to do that? I'm more confused because just earlier you were saying that they, that Amazon has not said that those, that those, the employees, the base employees of these DSPs would have to arbitrate. Let me clarify the situation. Amazon has not argued that if it had contracted directly with any of these individuals in this case, that as a matter of interpretation of section one, that the guys delivering the packages would, would be subject to mandatory arbitration and section one wouldn't apply. The reason they haven't is because this court already answered that question in Rittman. Additionally, in other circuits like Palco, which Rittman cited with approval, the third circuit said those who supervise and manage and make sure that the packages are being delivered, which is what the owners do, they're also exempt under section one. So, so counsel, I, I want to turn to a different issue for, for a minute and I'm, I'm looking at, for example, page 47 of your brief and I, I just want to make sure I have your position correct. So on the Brennan issue, Brent, so first of all, your view is that the Supreme Court decision in Morgan limits Brennan. I, Brennan is the law of the circuit. So I, I believe that though Morgan does upset the apple cart with respect to a lot of, because you've said, respectfully, it appears to be an artifact of the arbitrate at all costs mentality that the Supreme Court recently eschewed. Right. And so you're arguing that in deciding how to apply Brennan, we need to take into account Morgan and the extent to which Morgan may have limited it. Yes. I, in addition to the fact that also Brennan, as many district courts have held, should, should not be applied to unsophisticated parties here. But in Morgan, to be clear, the Supreme Court said, you know, you got to treat agreements to arbitrate just like any other agreement. What's the line you would, you would have us draw in determining whether a party is sophisticated or unsophisticated? And then if you could also speak to what facts might turn up here or what facts there already are on the record, that would show that you're not sophisticated. Sure. So the Amazon's own marketing materials, which are appended to the back of the complaint, say that they're looking for individuals who don't, don't own preexisting delivery businesses, right? That have, most of them have never even owned a business before. Amazon had to train them for three weeks, how to run their own business, right? So when we're talking about levels of sophistication, they're talking about like legally sophisticated is what the district court is saying. So the line would be where you can show that, for example, individuals had previously engaged in complex commercial transactions with arbitration clauses of this nature, where we're talking about folks who are legally educated, that's one thing, but to say that, you know, the average person who never owned a business, Amazon recruits, and again, they only recruited individuals, that they're going to appreciate that a one sentence reference to AAA rules without even incorporating those rules as a, as a part of the agreement. Yeah, clearly and, and without any sort of ambiguity, it means that we're going to delegate all issues to an arbitrator. I think that is an incredible series of steps that don't follow from one another and certainly shouldn't stand in the light of Morgan, but I'm sorry. So I'm just one more, one more question, then I'll let you finish your thoughts. So you, you argue first, you have not waived or forfeited this issue. That's correct. The delegation issue. That's correct. Second, that up before us is whether Brandon should be limited to sophisticated parties. That's correct. And third, you have offered us a method of, in answer to Judge Thomas's question of defining sophisticated. That's correct. And as you say, on page 48 of your brief, we should limit Brandon to cases involving indisputably sophisticated parties and hold that the, that the agreements reference to the AAA rules was not clear and unmistakable evidence of delegation. That's correct. And that none of these issues are waived or forfeited. That's correct. Okay. So counsel, we've taken up, particularly me, a lot of your time with questions. If you wanted to reserve the rest of your time, we'll give you your full five minutes for a rebuttal. Just take one minute and then I'll just have four. Yes, so it counts. I'll still give you five. Okay. So the, the one point I wanted to make, again, we got, I don't want to say off track, but I wanted to finish up on the statutory language. So these agreements, independent contractor relationships, falls within a definition of contract of employment. Then you have the rest of the clause of seamen, railroad employees, and then the catch-all, which has been interpreted to be transportation workers. So what does of mean? What does a contract of employment of these categories mean? And we, you know, I always say as a Supreme Court, I said, you start with the text. So we looked at what the dictionary definitions of what of meant at the time this bill was passed. And those definitions say of means relating to, concerning, involving. In fact, in Circuit City, the Supreme Court talked about qualifying contracts as those involving one of the specified categories of workers. And under that definition, just using the common parlance at the time, this clearly qualifies. It's an independent contractor relationship that indisputably involves the performance of qualifying transportation work by workers. So it's in all accords with the plain text of the statute, and I'll reserve my remaining time. All right. And, and as I say, we'll give you your five minutes. Thank you. Good morning, Your Honors. Brian Beckley with Fenwick and West for Amazon. Can I ask a clarifying question related to what I was asking for? So you have, you have, Amazon has contracts with the DSPs and your position is that DSP, the corporate entity, has to arbitrate. And your position, it sounds like, is that the, they can't get, they can't get around that by having the owner of the DSP say, well, I'm just suing in my individual capacity, and so I don't have to arbitrate. Let's say these DSPs have employees, right? People that are, right? Those employees don't have, don't have contracts directly with Amazon. They have, if they have contracts at all, they have contracts with the DSP. And what I was asking was whether those employees, if they had reason to sue Amazon, would Amazon's position be that those employees had to arbitrate with Amazon, you know, if they were, they, they wouldn't be suing on an employment contract because they don't have an employment contract with Amazon. So Your Honor, I didn't mean to cut you off. I think I understand the question. So if Amazon were sued by one of the DSP's employees, would Amazon take the position that that employee was required to arbitrate? Right. Amazon would not have a direct contractual ability to claim that. I'm not aware of a scenario like that. So I'm, I'm a little reluctant to say categorically what Amazon would or wouldn't do. I think the position your, your, your colleague, I understand, was getting at was he saying, well, Amazon makes the DSP's have an arbitration agreement with their employees. And I suppose, you know, a lawyer could try to get put in there that if you sue Amazon, you also would have to arbitrate. So they would, in theory, be agreeing. It's like a third party beneficiary. Of course, then you'd be a lot more directly implicating the statute, right? Because I don't know that Amazon's position is that those workers are not transportation employees, that those, that the employees of the DSP's are necessarily not transportation employees. So I'm just trying to figure out how far you're, you're, you're trying to, I think your position is that the corporations, the DSP's don't have to arbitrate and, and either, and they can't get around that by the owner somehow just suing in their own personal capacity. That's right. The DSP's do have to arbitrate and what's, but what's not at issue here is whether their employees would have to. If they, if they ended up either with the DSP or if, or somehow they ended up, okay, I just want to make, but, but in the, in the normal course, you have no reason to believe that those line individuals wouldn't be covered by the exemption. I believe it is likely that those who drive trucks would be one of the issues that's come up in particular in the 28 J letters that have gone back and forth is Amazon's not prepared to concede that all of the DSP's personnel would be  Well, it's not before us. Because it's not before us because your honor, there is no record of what, how many employees they have, what those employees do. I think it's fairly certain that they don't all drive trucks. And so we just haven't been prepared to concede whether every single person who works for Fly Low Falcon would be covered by section one. The drivers likely would be. Yes. So you, you might not know going in whether the, whether the accounting department, right. The bookkeepers or the janitor or the receptionist. And so your honor, the plaintiffs are asking you to do two remarkable things here. The first is they are asking you to effectively overrule Brennan and supplant it with a new rule that arbitration delegation only applies to indisputably sophisticated parties. Well, I, I'm, I mean, Brennan left open the, the, the question of, of sophistication. I mean, Brennan particularly said, and I quote, our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts, but it didn't decide that issue. Right. And that is right. And so that you were putting aside the issue of waiver or forfeiture. If there weren't waiver or forfeiture, you would agree with your friend that that issue is squarely before us. I believe the issue is squarely before you and what they are asking you to do is reach a different conclusion than Brennan reached. Well, but, but Brennan pointed out what other courts had held, but it's specifically said it wasn't getting there. It wasn't establishing a rule that the level of sophistication is always irrelevant, right? That's correct. But that's before us now. It, it is except to the extent that it's been waived. Yes, I understand. And we believe that it fairly clearly has been waived. And on that issue, plaintiff's position has been that Amazon didn't raise this issue before Judge, before Magistrate Peterson. And I want to clarify that. When we filed our motion to compel with Judge Peterson, I want to give you a couple of quotes from our motion. Page three of our brief, the agreement also requires the parties to arbitrate all disputes before the AAA under the AAA rules. And we quoted the AAA language, page seven of our brief, under well-established Ninth Circuit law, when there is a valid arbitration agreement that delegates authority to the arbitrator, all further questions, including whether the arbitration clause encompasses the dispute in question, must be decided by the arbitrator, not by a court. And we cited Brennan. In response to that, in opposition, the plaintiff said literally nothing about delegation. The word delegation doesn't even appear in their brief. And as a result of that, Judge Peterson said they had the opportunity to challenge the delegation clause. They chose not to. They waived that argument. And as a result, once you find that there is an agreement to arbitrate all other issues, with the exception of section one, and I'll come back to section one, all other issues have to go to the arbitrator. That's what Renner Center says. Their only response to that, which we're hearing for the first time in Rule 28J letters, is that they raised it when they objected to Judge Peterson's report and recommendation. You would agree that even if we took your view of the record, that we still have the discretion to reach it? You still have the discretion to reach that if you choose to decide to basically overcome the waiver? Well, if we were to decide, for example, that maybe it's waived or forfeited, maybe the evidence of that is ambiguous. But even if it were waived or forfeited, the law is that we still have the discretion to reach an issue that's squarely presented. It is within your discretion. I would say that that, I believe, turns the magistrate process on its head. The motion to a magistrate is not intended to be a dry run or a free pass for a new argument before the magistrate. You are not supposed to then try to make that argument or a different argument to the Article III judge. So I think it would be inconsistent with that. But you're absolutely right, Your Honor, that you have the discretion if you choose to. And so, in addition to asking the court to effectively revisit Brennan, the other thing they're asking you to do is to rewrite Section 1 and to create, essentially out of whole cloth, a new multi-factor test that would expand that exemption to include an entirely new category of entities. And that's exactly what Circuit City and other Supreme Court cases have said the court shouldn't do. The court should be looking to narrow the exemption, not expand it, and not expand it in the dramatic way that the plaintiffs are asking you to do. And their theme through their briefing, and really the premise of all of their arguments, is that the plaintiffs are not, in fact, businesses. That they're actually individuals who Amazon recruited, forced to incorporate, and then took advantage of effectively through the DSP program. In fact, in their reply, plaintiffs refer to the DSP program as a scam, a scam where Amazon requires individuals to form intermediary business entities to create the facade of independence. And never mind, excuse me, never mind that thousands of DSPs are operating successfully under this program. Let me give you a hypothetical. Please. Let's say you had 20 truck drivers who were Amazon employees. They just worked directly for Amazon, and Amazon decided that it doesn't like this model because it really wants to just have arbitrations. It doesn't want to go to court. It doesn't like what's happening in court, hates juries, and tells all the workers, you are terminated as Amazon employees, but if you want to reorganize as a corporate entity doing exactly the same work, we will sign an agreement with your corporation. But you're going to have to agree to arbitrate everything because in that instance, you're not going to be able to take advantage of Section 1. Any problem with that? So that's the plaintiff's slippery slope argument. Well, I'm asking you, but now it's my question. So any problem with that? Okay. So first, Your Honor, it's counterfactual. I'm not suggesting it's the facts here. I'm giving you a hypothetical. So whether it's the facts in your case or not, I'm asking you what your position is on my hypothetical. Okay. If Amazon were to proceed the way that you indicated, then the question would be, would Section 1 apply to those individuals who were individual drivers contracting directly with Amazon? It then forced them to create an intermediary business entity. Would Section 1 apply to those folks? I think the argument or the answer is probably not. But we could still have an arbitration provision in our agreement with those individuals that might be governed by state law. So remember, Section 1 doesn't mean that people are exempt from arbitration. Section 1 applies to contracts of employment, and all it says is the FAA doesn't apply. We could still have an arbitration agreement with those people, but the hypothetical that you're giving me is one where the intermediary business entity is, in fact, a sham, that that was the whole purpose of it. And I suspect if that were true, you would hold that Section 1 didn't apply. But we have a program, the AmFlex program, with tens of thousands of individual drivers in it that was founded in 2015 before the DSP program, and Amazon doesn't do that. It contracts individually with those individuals. It's the folks who show up at your house to deliver you your package in their own cars. And Amazon has never required those people to form contracts. So if this were all part of some elaborate scam to evade Section 1, we'd already be doing that, and Amazon doesn't do that. So, Your Honor, I think I want to come back for a moment to what's in the record and what's not in the record. Given what the plaintiffs are asking you to do, you would think they would have made a particularly robust record here. They've made almost no record at all. All they did was put in three fairly thin declarations that have very few details about the DSP's businesses. You don't know how many employees they have. You don't know how many trucks they have. You don't know how many routes they run. You don't know how much money they made. But what you do know, what we know from what is in the record, is that Amazon, there's no evidence that Amazon recruited any of these people. What Amazon did was create a business opportunity, the DSP 2.0 program, and it publicly marketed it. And what the marketing materials say, which are attached to the complaint, is that if you're a DSP, you're going to have 20 to 40 vehicles. You're going to have 40 to 100 employees. And we know some of the DSPs have far more employees than that. In the Amos case, that DSP had 450 employees. And if you do that, you can stand to make between a million and four and a half million dollars in revenue a year. That is a fairly sophisticated business. And the plaintiffs say, well, you forced us to incorporate. That's not true either. Flylow Falcon, the first named plaintiff, was incorporated on August 27th of 2018. It signed the DSP agreement on October 29th, 2019, over a year later. And we know from the original complaint, Flylow had 188 employees over a year and a half period. It tried to keep 80 employees on its payroll at any given time. It delivered 400 packages a day, had 25 routes on average a day. That's a sophisticated business. Stelvio, Transport, one of the other named plaintiffs, it is an even majority owned by human beings. Its primary LLC member is a private equity firm out of San Diego that's owned by Omar Ali, the man who signed the DSP agreement. And Stelvio was part of DSP 1.0 and then chose to join DSP 2.0, so it knew exactly what it was getting into. It knew what it was contracting for. And then it operated in the DSP 2.0 program for four years. So it's not credible to say that these businesses were tricked in some way or scammed in some way. They joined the DSP program knowing what they were getting into. They hired employees, they leased trucks, they ran routes, they delivered packages. And again, to get back to Section 1, Section 1 covers contracts of employment. If you look at this agreement and this is what the Amos Court concluded, it has none of the hallmarks of a contract of employment. That is not what this is. This is a business agreement between two corporate entities and how the DSPs ultimately chose to run their own businesses is on them. The fact that a couple of the founders say they occasionally drove a truck, they weren't required to do that. Nothing in the contract required them to do that. And frankly, Your Honors, Amazon would probably prefer that they not do that, that they instead focus on running a business, hiring, recruiting, training, talking to their lawyers, talking to their bookkeepers and financial folks, managing the relationship with Amazon, not driving trucks. But if they chose to do that, it's not because the contract required it. And Your Honor, these are not new arguments. Other DSPs have tried exactly these same arguments and not a single court has agreed that the way Section 1 is written, the way it has evolved over time, nothing about Section 1 suggests that it was ever intended to cover anything other than human workers. It's why it's worded the way it's worded. It covers seamen, railroad employees and classes of workers, not classes of workers and other entities, not classes of workers and companies. It covers humans. And I commend you to the. Well, we know it covers independent contractors.  Oliveira had a direct relationship with New Prime. In that case, it was the corporation. That may be, but the Supreme Court has told us that the only humans test isn't the right one. No, it hasn't. That is absolutely not what New Prime stands for. What New Prime said was the fact that there is an LLC involved here is totally incidental. This is an agreement between the corporation and a human. And that's why the fact that he happened to have an LLC formed didn't matter because New Prime said, Mr. Oliveira, will you please drive a truck for us? That is not our case. And the fact that the DSP agreement has an independent contractor clause in it, it's apples to oranges. Lots of commercial agreements have an independent contractor clause. That's to distinguish that relationship from a joint venture or a partnership or some other corporate relationship. Those are corporate concepts. Independent contractor versus employer with a person. Those are employment concepts. And you're saying those aren't our facts. Those are not our facts. Thank you, Your Honor. And I am almost at time. I might be over. You're over. So if you have one final point. My final point is Judge Magistrate, Judge Peterson got it right. She was thoughtful. She had a hearing. She looked at the record. She took the issue seriously. She issued a report and recommendation that is thorough and well reasoned. She got it right. Judge Martinez agreed. He didn't even wait for us to respond to the plaintiff's objections. He simply agreed with the magistrate. And we think you should, too. Thank you. Thank you, counsel. So a couple of points to follow up with, and I'd like to address the Amos decision out of the Fourth Circuit first, because it exposes a lot of the errors of the arguments that the appellants have made today, that Amazon made today, appellees, pardon me. First, this idea that the contract has to have the traditional hallmarks of an employment relationship. Well, that's what the Fourth Circuit said, but that's completely contradicted by Newprime. Newprime said, no, it's not limited to employment relationships. It includes independent contractor relationships, which the court is well aware typically don't include the hallmarks of employment relationships. Independent contractors don't get paid time off or leave or have medical care or any of that stuff. And so the idea that it doesn't have these hallmarks, that's wrong right off the bat. The Fourth Circuit also said, oh, well, the work here has to be performed by the DSP. Well, that's not correct either, right? The work has to be performed by the DSP through its personnel. And that's what the program policies, which are incorporated into the agreement, say. Third, and this is one of the main issues, is that Amos said, well, this exception only applies to contracts made by individuals falling within these categories. But that's an ipsedixit that assumes the answer, right? It didn't apply any taxable analysis. And again, if you do a textual analysis, looking at the words as they were understood to be to mean at the time of the passage of the Act of contracts of employment of seamen, rail workers and then transportation workers, right, of was meant involving, related to or concerning. If Congress meant to say signed by, made by, entered into by, executed by, it could have done that. It didn't. And under the parlance of the time, it captures agreements as long as it's an independent contract relationship, which you have here, indisputably, and calls for the performance of qualifying transportation work by workers, which is exactly what this agreement does here. With respect to the thinness of the record on the issues of Amazon's domination and this relationship, it's in their own program policies. It's in the marketing materials that they put at the end of the, we put at the end of the complaint. And to the point, this idea that there are accounting personnel or anything else, that's nonsense. As we pointed out in our letters, in our brief, DSPs consist of two categories, a single owner, with the exception of those who've been grandfathered in from DSP Program 1, DSP Program 2, no corporate entities could apply, no preexisting businesses, no groups, just individuals. So you have an owner and then you have drivers. And how do we know that? Because that's what Amazon says in its own marketing materials, right? It talks about how you run the business from stem to stern. And there are only two categories of folks. And those folks, all the work they do is qualifying transportation work. With respect to this issue of waiver on the delegation issue, first, I want to make clear, they never argued that the threshold issue of whether the FAA applies or the FAA was delegated. They've never argued that. They would be wrong also because the Supreme Court said these issues, these threshold issues with respect to the FAA Section 1, that's for the court to decide. But I also want to get to the point of the argument they claim was waived that was delegated, which is the issue of unconscionability. Before the district court, Amazon addressed unconscionability just as it did whether the Washington Uniform Arbitration Act applied and whether the FAA applied in the section of its brief concerning the issues that the district court was going to decide in the first instance. Its brief is pages 81 to 103 of the record. Now, I don't have the page on the site, but basically in the section of their brief where they start talking about delegation, which comes after the discussion of the Washington Uniform Arbitration Act, after the discussion of unconscionability, after the discussion of the FAA, then Amazon says all further arguments, all remaining arguments are delegated. That's why in its brief it doesn't actually come out and say that these issues have been delegated. The only issue that they argue was delegated was unconscionability and they only mentioned that on their reply brief below after they addressed it in the context of the issues that were before the district court for the district court to their letter, saying that when you don't raise an argument until it's raised for the first time in a report and recommendation injections, that that's waiver. None of those cases stand for the proposition that Amazon can make a specific delegation argument it didn't make in its opening brief, wait till its reply brief and then profit from that and say you've waived. So none of those cases are applicable. And lastly, I just want to sum up on the Washington Uniform Arbitration Act issue. As we pointed out, several courts have held in the Ninth Circuit several decisions that you have to clearly express an intent to have the state laws rules supplement the FAA in the event that the FAA is deemed inapplicable. They didn't do that here. Right. All right. Thank you, counsel. We thank both counsel for their arguments and the case just argued is submitted.
judges: BENNETT, VANDYKE, THOMAS